CINCINNATI INSURANCE COMPANY, Appellant,

v.

AMERICAN LINE BUILDERS APPRENTICESHIP
TRAINING PROGRAM et al., Appellees.

[Cite as *Cincinnati Ins. Co. v. Am. Line Bldrs. Apprenticeship
Training Program* (1994), 93 Ohio App.3d 392.]

Court of Appeals of Ohio,
Montgomery County.

No. 14110.

Decided March 2, 1994.

*Stephen Findley,* for appellant.

*Gary Snyder* and *Robert M. O'Neal,* for appellee ALBAT.

*Richard J. LaSalvia,* for appellee Walter Lang.

GRADY, Presiding Judge.

This is an appeal from a summary judgment in an action for a declaratory judgment brought by an insurer to construe an exclusionary provision in a policy of liability insurance. The trial court held that the exclusion did not apply and granted summary judgment for the insured. Appellant Cincinnati Insurance Company ("CIC") argues on appeal that the trial court erred when it found that the exclusion did not apply and should, instead, have granted summary judgment to CIC.

Appellee American Line Builders Apprenticeship Training Program ("AL-BAT") is a proprietary school engaged in the education and training of persons for skilled trades. It is headquartered in Montgomery County. It maintains a policy of liability insurance with CIC.

Appellee Walter Lang was enrolled in one of ALBAT's training programs in 1989. While working under the direction of an ALBAT instructor, Lang was electrocuted when a chain hoist he was using made contact with high voltage electrical lines. Lang suffered severe injuries. The incident occurred in the state of Indiana. Lang brought an action there against ALBAT and others, alleging that his injuries were "due to the negligence, carelessness and the liability producing conduct and omissions of all named Defendants." The action has been removed from state court to federal court.

The action for declaratory judgment underlying this appeal was brought in Montgomery County. It sought a declaration of whether or not CIC was required to defend and/or indemnify ALBAT in respect to Lang's claim for relief in Indiana. It seems undisputed that the basic provisions of the policy would require coverage. The only dispute arises from the following policy provision:

"EXCLUSION OF PROFESSIONAL LIABILITY ENDORSEMENT

"It is agreed that such insurance as is provided by the policy for bodily injury, personal injury, or property damage does not apply if such injury or damage arises out of any claim for Professional Liability or Malpractice made against an Insured caused by any negligent act, error, or omission of an Insured or any other person for whose acts an Insured is legally liable in the conduct of any business, trade, profession, municipal service, such as, but not limited to, law enforcement departments, fire departments (including volunteer), health department, ambulance service, paramedics, lawyers, or judges."

CIC argued that it should not be required to defend or indemnify because the injury arose out of ALBAT's conduct of a business, trade, or profession. The trial court rejected that argument, and focused instead on the nature of the "claim" that Lang brought in his action. The court stated:

"The applicability of the 'professional liability and malpractice' exclusion is unclear. Part IV of the Personal Umbrella Liability Endorsement provision of the policy does list engineers as 'professionals.' However, engineers only account for four out of forty-four instructors in the program. Further, Lang had never received instruction from an engineer, and no engineer was present when the accident occurred.

"Neither policy specifically includes teachers, educational-type professionals, or linesmen in its exclusion for professional liability or malpractice. None of these classifications [is] included in the common law definition for professional malpractice. To include teachers, educational-type professionals, or linesmen in the policy's definition of 'professional' would amount to the construction of an ambiguous term liberally in favor of CIC, which is not justified in this case. Thus, the Referee is correct in concluding that since Lang was not under the supervision of a professional nor had he received any instruction from a professional, the exclusion for professional liability does not apply."

■ CIC's argument on appeal is essentially the same argument rejected by the trial court. We must reject it, as well.

■ The rules of construction for interpretation of insurance contracts are well known. Issues concerning coverage must be determined by a reasonable construction of the contract in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed. *Dealers Dairy Products, Inc. v. Royal Ins. Co.* (1960), 170 Ohio St. 336, 10 O.O.2d 424, 164 N.E.2d 745. Where contract provisions are ambiguous, they will be construed strictly against the insurer and liberally in favor of the insured. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380.

The trial court correctly focused on the claim for relief against the insured rather than the general activity that gave rise to it. The nature of the claim is determined by the duty of care concerned, and its alleged breach.

 Simple negligence contemplates breach of a duty of ordinary care. "Malpractice" contemplates breach of a higher duty, one which requires the application of knowledge and skill superior to that of the ordinary person in order to change, modify, or improve the condition of another. When a person who owes that duty to another because of the relationship between them fails to employ it, the actor will be held liable for injuries to the other person proximately resulting from that failure. Such persons must use the care and skill reasonable in the light of their superior learning and experience. For such persons the relevant standard of conduct is "good practice," not a *minimum* standard of care.

The relationship between Lang and ALBAT's instructor was that of teacher and pupil. It no doubt required that the instructor possess specialized knowledge and skill in the trade in which Lang was being instructed. However, according to Lang's claim, ALBAT's instructor was required only to school Lang in the trade and to supervise his efforts to learn, not to himself exercise that specialized knowledge and skill to change, modify, or improve Lang's condition. That, in essence, is the role of a "professional," such as a physician or attorney, into whose care a patient or client places himself or herself. The instructor's role here was not to change Lang or his condition, but to impart knowledge by which Lang could do so. Their relationship did not place the instructor in the position of a professional, and his alleged negligence does not constitute a form of malpractice for which only a professional may be liable, but merely a breach of his duty of ordinary care.

The trial court did not err in entering summary judgment for ALBAT, finding that the insurance contract required CIC to defend and indemnify ALBAT against Lang's claim. Its judgment will be affirmed.

*Judgment affirmed.*

WOLFF and FREDERICK N. YOUNG, JJ., CONCUR.